ACCEPTED
03-15-00427-CV
13129091
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/7/2016 2:33:34 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00427-CV

**In the Court of Appeals
for the Third Judicial District
Austin, Texas**

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/7/2016 2:33:34 PM
JEFFREY D. KYLE
Clerk

GLENN HEGAR, COMPTROLLER OF THE STATE OF TEXAS AND KEN PAXTON,
ATTORNEY GENERAL OF THE STATE OF TEXAS,
*Appellants,*

v.

AUTOHAUS LP, LLP,
*Appellee.*

On Appeal from the 419th Judicial District of Travis County, Texas

## STATE'S RESPONSE TO AMICI'S BRIEF

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant
  Attorney General

JAMES E. DAVIS
Deputy Attorney General
  for Civil Litigation

JACK HOHENGARTEN
State Bar No. 0981220
Chief, Tax Division
Tel. (512) 475-1743; Fax (512) 477-2348
jack.hohengarten@oag.texas.gov
P.O. Box 12548
Austin, Texas 78711-2548

PAMELA D. DEITCHLE
Assistant Attorney General, Tax Division

CHARLES K. ELDRED
Assistant Attorney General, Tax Division

*Counsel for Appellants*

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. ii

INDEX OF AUTHORITIES ................................................................................... iii

LEGAL AND FACTUAL BACKGROUND. ............................................................2

ARGUMENT ...........................................................................................................4

    A.  Overview of Amici's "two-step" analysis. ............................................4

    B.  There is no statutory basis for "step one" of Amici's two-step analysis. Taxpayers do not "qualify for the deduction." Rather, costs either are or are not cost-of-goods-sold. .................................................................................6

    C.  There is also no statutory basis for "step two" of Amici's analysis; taxpayers may not simply include all their federal costs, minus of a small amount of costs in subsections (e) and (f), in their cost-of-goods-sold deduction. ..................................................................................................9

    D.  Amici's discussion of "service costs" versus "labor costs" is misplaced. ......15

CONCLUSION & PRAYER ...................................................................................16

CERTIFICATE OF COMPLIANCE ......................................................................19

CERTIFICATE OF SERVICE ...............................................................................19

# INDEX OF AUTHORITIES

**Cases**

*Combs v. Newpark Res., Inc.*,
422 S.W.3d 46 (Tex. App.—Austin 2013, no pet.)........................................ 2, 16

*Hegar v. CGG Veritas Services (U.S.), Inc.*,
03-14-00713-CV, 2016 WL 1039054
(Tex. App.—Austin Mar. 9, 2016, no pet.) ..........................................................16

*In re Nestle USA, Inc.*,
387 S.W.3d 610, 615 (Tex. 2012) ......................................................................2

**Statutes**

Act of May 2, 2006, 79th Leg., 3d C. S., ch. 1, § 21, 2006 Tex. Gen.
Laws 1, 38.............................................................................................................6

Tex. Tax Code § 171.1012................................................................... passim

Tex. Gov't Code § 311.005(13).......................................................................13

Tex. Tax Code § 171.1011(c) ..........................................................................11

Tex. Tax Code § 171.1012(a)(1).......................................................................7

Tex. Tax Code § 171.1012(c) ..................................................................... 3, 13

Tex. Tax Code § 171.1012(g) ..........................................................................10

Tex. Tax Code § 171.1012(h) ............................................................. 9, 10, 11, 13

Tex. Tax Code § 171.1012(i).......................................................................3, 7

Tex. Tax Code § 171.1012(i),
(k-1)(2), ...............................................................................................................3
(k-2), ...................................................................................................................3
(t)..........................................................................................................................3

No. 03-15-00427-CV

In the Court of Appeals
for the Third Judicial District
Austin, Texas

GLENN HEGAR, COMPTROLLER OF THE STATE OF TEXAS AND KEN PAXTON,
ATTORNEY GENERAL OF THE STATE OF TEXAS,
*Appellants,*

v.

AUTOHAUS LP, LLP,
*Appellee.*

On Appeal from the 419th Judicial District of Travis County, Texas

STATE'S RESPONSE TO AMICI'S BRIEF

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

Non-parties Gulf Copper & Manufacturing Corporation and other businesses ("Amici") have filed a "friends of the court" brief that ostensibly seeks to assist the Court in its determination of the issues presented. Their brief, however, does not further the analysis of this case. Instead, it is a thinly-veiled and improper effort to lobby this Court for a judicial repeal and rewrite of the Tax Code's cost-of-goods sold statute. As such, it should be ignored.

1

# I.

## LEGAL AND FACTUAL BACKGROUND.

When the Legislature adopted the margin tax, it granted business taxpayers fewer deductions than permitted under the Internal Revenue Code so that the tax rate could be reduced to 1% or less. That is why the Texas business tax is called a "margin tax" and not an income tax. In particular, only some of a taxpayer's federally deductible costs qualify for a "costs-of-goods-sold" deduction. As a general rule, direct costs and four percent (4%) of indirect costs of acquiring and producing tangible personal property that is sold (plus certain other costs related to tangible personal property that is sold), are costs-of-goods-sold, while costs related to services or intangible property that is sold are not.[1] For instance, labor costs that are *direct* costs of acquiring or producing goods are deductible. Tex. Tax Code 171.1012(c)(1).

---

[1] Tex. Tax Code § 171.1012(a) (defining "goods" as "tangible personal property *sold* in the ordinary course of business [emphasis added]" and excluding intangible property and services from "tangible personal property"); Tex. Tax Code § 171.1012(c) ("The costs of goods sold includes all direct costs of acquiring or producing the goods"); Tex. Tax Code § 171.1012(d) ("In addition to the amounts includable under subsection (c), the cost of goods sold includes the following costs in relation to the taxable entity's goods [listing ten categories of additional costs]"); *see In re Nestle USA, Inc.*, 387 S.W.3d 610, 615 (Tex. 2012) (the cost-of-goods-sold includes "all direct costs of acquiring or producing goods, some indirect costs like insurance, utilities, and quality control, and up to 4% of other indirect or administrative overhead costs"); *Combs v. Newpark Res., Inc.*, 422 S.W.3d 46, 48 (Tex. App.—Austin 2013, no pet.) (same).

Section 171.1012 also provides that certain costs related to specific activities and industries (such as furnishing labor or materials to construction projects, leasing heavy construction equipment, operating a pipeline, and operating a movie theater) are costs-of-goods-sold, regardless of whether they are costs related to tangible personal property that is sold or whether they are costs related to services sold or intangible property that is sold. Tex. Tax Code § 171.1012(i), (k-1)(2), (k-2), (t). Costs-of-goods-sold are calculated differently in those cases, but none of those industry-specific costs are at issue here.

What *is* at issue is this: Autohaus repairs and performs maintenance on its customers' cars. In doing so, it acquires parts and installs them on the cars. Ownership of the installed parts is thereby transferred to Autohaus's customers—so Autohaus *sells* those parts to its customers. Thus, Autohaus's costs of acquiring the parts that it sells to customers are costs-of-goods-sold. Tex. Tax Code § 171.1012(c). The dispute here is whether Autohaus's costs of *installing* those parts —including labor costs—are *also* costs-of-goods-sold.

For example, when Autohaus purchases a brake pad that will eventually be installed on a customer automobile in the ordinary course of business, the costs of acquiring that brake pad are costs-of-goods-sold. Tex. Tax Code § 171.1012(c). Autohaus also pays an employee to install the brake pad on its customer's automobile. The issue in this case is whether those labor costs, and other costs

3

related to installing brake pads, are costs-of-goods-sold. Autohaus and the State have fully briefed this issue.

## II.

## ARGUMENT

Part I of Amici's brief argues that the framework above is incorrect and that a "two-step analysis" should be used instead. Parts II, III, and IV of Amici's brief contain further discussion of their two-step analysis, and also contain more conventional arguments that largely mirror those already made by Autohaus. Amici also include an argument regarding service costs and labor costs. This Response will only address the two-step analysis and, briefly, the service/labor costs issue.

### A. Overview of Amici's "two-step" analysis.

Though Amici describe and attempt to justify a two-step analysis for determining cost-of-goods-sold, they never apply their analysis to the facts of this case. But if they did, the argument would be as follows:

Autohaus "qualifies for the cost-of-goods-sold deduction" as an "actual owner" by "selling goods it produced and/or reselling goods it acquired." In Amici's world, the debate over whether the costs of installing parts on customer cars are costs-of-goods-sold is irrelevant. All that matters is that Autohaus sells goods. That's "Step One." (Amici Br. at 7, 8).

Next, because Autohaus "qualifies for the deduction," all of its costs under its federal income tax return (with some small exceptions) are costs-of-goods-sold — whether or not they have anything to do with the costs of acquiring or producing the tangible personal property that is actually sold or with the additional costs listed in subsection (d). Indeed, under Amici's analysis, the criteria of subsections (c) and (d) of section 171.1012 are ignored altogether.

Instead, *federal* deductions are posited as controlling. According to Amici: "The Legislature intended for qualifying taxpayers to deduct all of their federal costs after adjusting them as provided by the state statute." (Amici Br. At 11.) The "adjusting" of costs under the "state statute" in the preceding sentence refers to the categories of costs listed in subsection (e) of the costs-of-goods-sold statute and to the 4% of indirect costs of acquiring and producing goods under subsection (f). That completes "Step Two." (Amici Br. at 11).

Neither the Comptroller nor Autohaus has presented this two-step analysis for deciding their dispute, because there is no statutory basis for it. Amici's analysis is a fiction and should be rejected.

Amici are really asking this Court to conclude that the Legislature adopted federal corporate income tax deductions with slight modifications—even though it explicitly said otherwise: "The franchise tax imposed by Chapter 171, Tax Code, as amended by this Act, is not an income tax." Act of May 2, 2006, 79th Leg., 3d C.

5

S., ch. 1, § 21, 2006 Tex. Gen. Laws 1, 38. Amici are also saying, and urging this Court to conclude, that the list of includable costs in the statute – the heart of the statute – is inoperative surplusage. But, as shown below, Amici's approach is a drastic departure from the statutory language in section 171.1012.

**B. There is no statutory basis for "step one" of Amici's two-step analysis. Taxpayers do not "qualify for the deduction." Rather, costs either are or are not costs-of-goods-sold.**

Simply put, the costs-of-goods-sold deduction generally encompasses certain kinds of taxpayer *costs* or amounts, not certain kinds of *taxpayers*. Each cost either is or is not a cost-of-goods-sold under section 171.1012. Nothing in that statute supports the question posited by step one of Gulf Copper's analysis: whether a business, as an "actual owner," "qualifies" for the cost-of-goods-sold deduction.

According to Amici, taxpayers "qualify for the cost-of-goods-sold deduction" (or "cross the qualification threshold"), and "[t]he statute qualifies both *actual* owners (based on the traditional incidents of ownership) and *deemed* owners (who furnish labor or materials to real property construction projects)." (Amici Br. at 7) (emphasis in original). Amici base their argument on the second and third sentences of Tax Code section 171.1012(i), which say no such thing.

The first three sentences of subsection (i) read:

> A taxable entity may make a subtraction under this section in relation to the cost of goods sold only if that entity owns the goods. The determination of whether a taxable entity is an owner is based on all of the facts and circumstances, including the various benefits and burdens

6

of ownership vested with the taxable entity. A taxable entity furnishing labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance (as the term "maintenance" is defined in 34 T.A.C. Section 3.357) of real property is considered to be an owner of that labor or materials and may include the costs, as allowed by this section, in the computation of cost of goods sold.

Tex. Tax Code § 171.1012(i). "Goods" are defined as "real or tangible personal property sold in the ordinary course of business of a taxable entity." Tex. Tax Code § 171.1012(a)(1).

In context, the first two sentences of subsection (i) merely state that costs are not included in a taxpayer's cost-of-goods-sold deduction unless they are related to real or tangible personal property that the taxpayer owns and then sells. They do not say anything about whether a taxpayer itself "qualifies" as an "actual owner." They certainly do not say or suggest that if a taxpayer ever sells real or tangible personal property, nearly all its costs are cost-of-goods-sold—regardless of whether those costs relate to the tangible personal property that is actually sold.

The third sentence of subsection (i) states that a taxpayer who furnishes labor or materials to certain kinds of projects "is considered to be an owner of that labor and materials" and may take a cost-of-goods-sold deduction for costs related to that labor and materials. In other words, certain costs related to labor or materials furnished to certain kinds of projects are cost-of-goods-sold. This sentence does not say or suggest that if a taxpayer ever furnishes any labor or materials to projects,

7

then almost all of its costs are cost-of-goods-sold, whether or not the costs are related to the labor or materials actually furnished.

None of these sentences refer to taxpayers themselves; they refer to two categories of costs typically associated with particular activities. First, a taxpayer might own goods (real or tangible personal property sold in the ordinary course of business), and if it does, then it may include certain costs related to those goods in its costs-of-goods-sold deduction. Second, a taxpayer might instead furnish labor and materials to projects, and if it does, then it may include certain costs related to that furnishing of labor or materials in its cost-of-goods-sold deduction. These are not "alternative method[s] of qualifying for the [cost-of-goods-sold] deduction" as Amici contend. (Amici Br. at 10). They are simply two different scenarios under which a taxpayer may incur costs that could potentially be deductible costs-of-goods-sold under the statute.

Particular taxpayer costs (or categories of costs) either are or are not costs-of-goods-sold. There is no question of whether a taxpayer "qualifies for the deduction," because the issue is whether the *cost* is a deductible expense. Additionally, following Amici's step-one analysis to its logical conclusion, it is difficult to see *any* franchise taxpayers that will not "qualify for the deduction" because just about every franchise taxpayer sells some tangible personal property.

Amici themselves concede step-one's broad application when they observe that only "taxpayer[s] whose business activity is *purely* the sale of services (unrelated to goods)" do not "qualify for the deduction"—for example, according to Amici, "legal and accounting service providers do not qualify for Costs-of-Goods-Sold."  (Amici Br. at 8–9) (emphasis added).

This expansive approach to "qualifying" taxpayers for the deduction becomes even more important in "step two"—because, according to Amici, taxpayers who "qualify for the deduction" may include almost all of their costs as costs-of-goods-sold.

**C. There is also no statutory basis for "step two" of Amici's analysis; taxpayers may not simply include all their federal costs, minus of a small amount of costs in subsections (e) and (f), in their cost-of-goods-sold deduction.**

Under Amici's approach, since the taxpayer now "qualifies for the deduction," the next question is: what is the deduction?  Amici's answer is: *all* federal costs, except those costs listed in subsection (e) and, further, that only 4% of costs listed in subsection (f) may be included. Amici reach this remarkable result by misreading subsection (h), which provides:

> A taxable entity shall determine its cost of goods sold, except as otherwise provided by this section, in accordance with the methods used on the federal income tax return on which the report under this chapter is based.  This subsection does not affect the type or category of cost of goods sold that may be subtracted under this section.

Tex. Tax Code § 171.1012(h).  This provision must be read in context with subsection (g):

9

A taxable entity that is allowed a subtraction by this section for a cost of goods sold and that is subject to Section 263A, 460, or 471, Internal Revenue Code, may capitalize that cost in the same manner and to the same extent that the taxable entity capitalized that cost on its federal income tax return or may expense those costs, except for costs excluded under Subsection (e), or in accordance with Subsections (c), (d), and (f). If the taxable entity elects to capitalize costs, it must capitalize each cost allowed under this section that it capitalized on its federal income tax return. If the taxable entity later elects to begin expensing a cost that may be allowed under this section as a cost of goods sold, the entity may not deduct any cost in ending inventory from a previous report. If the taxable entity elects to expense a cost of goods sold that may be allowed under this section, a cost incurred before the first day of the period on which the report is based may not be subtracted as a cost of goods sold. If the taxable entity elects to expense a cost of goods sold and later elects to capitalize that cost of goods sold, a cost expensed on a previous report may not be capitalized.

Tex. Tax Code § 171.1012(g).

These provisions refer to *methods* of calculating costs at certain times. They require that a taxpayer use the same accounting methods (*e.g.* capitalizing costs – taking costs after they are incurred, versus expensing costs as incurred) on its federal income tax returns as it uses on its Texas franchise tax report—except that a taxpayer who capitalizes costs on a federal return may expense them on its franchise tax report.

These provisions say nothing at all about which costs are deductible. To the contrary, subsection (h) specifically states, "*This subsection does not affect the type or category of cost of goods sold that may be subtracted under this section.*" Tex. Tax Code § 171.1012(h) (emphasis added). "This section" is Section 171.1012: the

cost-of-goods-sold statute. Thus, a taxpayer must determine whether a cost, or type or category of costs, is a cost-of-goods-sold by referring to Section 171.1012, not to federal deductions as Amici assert.

Compounding their misreading of the statute, Amici add words to subsection (h), claiming that it requires a Texas franchise taxpayer to "start with the accounting methods used *and the costs reported* on its federal income tax return." (Amici Br. at 11). But subsection (h) says nothing about "costs reported." Rather, it states that it "*does not affect* the type or category of cost of goods sold that may be subtracted." Tex. Tax Code § 171.1012(h) (emphasis added).

Since subsection (h) says the opposite of what Amici say it says, they are left relying on *non sequiturs* and conclusory assertions to bolster their argument. First, they note that many states, including Texas, "piggyback" on the federal income tax. (Amici Br. at 14–15). But while Texas might be said to "piggyback" on the federal income tax on the revenue side (which is not at issue in this case), it does not "piggyback" on the deduction side. *Compare* Tex. Tax Code § 171.1011(c) with § 171.1012. Indeed, Amici never explain why this piggybacking should matter to the court, other than suggesting that it might make it easier for taxpayers to calculate their taxes.

Amici may be trying to connect this point to an assertion made on page 4 of their brief: "It would be illogical to require taxpayers to toss aside all of their federal

accounting and start anew." At best, this is a policy argument for changes in the state franchise tax scheme. Since the Legislature sets franchise tax policy – and has done so in the cost-of-goods-sold statute – courts may not now disregard that statute in favor of Amici's assertions about preferable tax policies and ease of calculation.

Next, Amici launch into an extended discussion of Sections 446 and 263A of the Internal Revenue Code and a regulation adopted under Section 263A. Amici Brief at 15–26. Section 446 addresses methods of accounting on federal income tax returns. Section 263A addresses capitalization of certain costs, and the regulation goes into detail concerning which costs must, may, or may not be capitalized. Amici say the point of their lengthy discussion is that: "It is reasonable to conclude that Texas taxpayers who employ IRC section 263A's accounting method on their federal return should use the costs included in that section as a starting place for the costs allowed in its [cost-of-goods-sold] deduction [under Tex. Tax Code § 171.1012]." (Amici Br. at 25–26).

Regardless of what accounting method Amici believe taxpayers "should" use, the Tax Code controls the determination of Texas state taxes. Under Texas law, franchise taxpayers must prove that each cost or category of costs is a cost-of-goods-sold under the state statute. Whether and how the taxpayer uses Section 263A on its federal return is irrelevant, except that it must use the same *methods* on both returns (subsection (h)), but may capitalize costs for Texas franchise tax like it does on its

12

federal return (subsection (g)).  Again, subsection (h) "does not affect the type or category of cost of goods sold that may be subtracted under [Tex. Tax Code § 171.1012]."  Tex. Tax Code § 171.1012(h).

Further, Amici's claim that all federal costs are includable as costs-of-goods-sold is inconsistent with subsections (c) and (f), which say that only costs of acquiring and producing goods are includable—and with subsection (d), which lists some additional costs in relation to goods that are includable.  Tex. Tax Code § 171.1012(c), (d) and (f).  Amici attempt to avoid these statutory restrictions by citing Government Code section 311.005(13) for the proposition that the costs listed in those subsections are broad and not exhaustive.  *See* Tex. Gov't Code § 311.005(13) ("'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.").

But, again, Amici misread the statute. Section 171.1012(c) states, "[t]he cost of goods sold includes all direct costs of acquiring or producing the goods, including [thirteen categories of costs]."  Here, "including" designates that the list of *direct* costs is non-exclusive.  But costs under subsection (c) are still limited in that they must be "direct costs of acquiring or producing" real or tangible personal property sold in the ordinary course of business.

13

The list under subsection (d) adds to the costs includable under the previous subsection: "*In addition to* the amounts includable under Subsection (c), the cost of goods sold includes the following costs in relation to the taxable entity's goods: [list of ten categories of costs]." The costs "in addition to" acquisition and production costs are the costs listed in subsection (d). Costs that are not on the list of subsection (d) costs are not "in addition to" acquisition and production costs under subsection (c). Subsection (d) by its own terms does not expand includable costs beyond those specifically enumerated. And subsection (d) costs are, again, limited to certain costs related to real or tangible personal property sold in the ordinary course of business.

Finally, subsection (f) also allows taxpayers to include four percent (4%) of "indirect or administrative overhead costs … that it can demonstrate are allocable to the acquisition or production of goods." It does not expand allowable costs any further than that.

A taxpayer's federal deductions are irrelevant to its Texas cost-of-goods-sold deduction, except with respect to accounting methods and the accounting period in which a taxpayer may deduct certain costs. Take the example of strategic business planning costs:

- The costs are not specifically excluded from Texas cost-of-goods sold under section 171.1012(e).

- But the costs are not included in Texas cost-of-goods sold under section 171.1012(c) because they are not "direct costs of acquiring or producing the goods."

14

- And the costs are not included in the itemized list of Texas cost-of-goods sold in section 171.1012(d).

- And the costs are not included in Texas indirect or administrative overhead costs under section 171.1012(f) because they are not "allocable to the acquisition or production of goods."

- But the costs are deductible for federal purposes as "service costs." See 26 C.F.R. § 1.263A-1(e)(4)(iv)(B).

So Amici are simply wrong in their notion that a taxpayer simply adds up its federal costs and removes the costs disallowed by section 171.1012(e). (Amici Br. at 11).

In sum, the two-step analysis advocated Amici vitiates section 171.1012 of the Tax Code in favor of sophistry conjured from their erroneous premise that the Texas franchise tax is a tax on "gross profits" (Amici Br. at 3); their selective and mistaken reading of section 171.1012's provisions; and, not least, their wholly unsupported assertion that this court should engraft cherry-picked portions of the federal income tax statutes onto the state statute.

**D. Amici's discussion of "service costs" versus "labor costs" is misplaced.**

Amici's discussion of service costs and labor costs is wrong and irrelevant to a determination of this case. (Amici Br. at 31-40). Here, the question before the Court is clear-cut: Are Autohaus's labor costs related to installing automobile parts on automobiles costs-of-goods-sold? While costs related to selling services are not cost-of-goods-sold, labor costs that are also direct costs of acquiring or producing

15

real or tangible personal property sold in the ordinary course of business are costs-of-goods-sold.

But Amici muddy the waters by discussing the costs of furnishing labor or materials to construction projects, which can be costs-of-goods-sold under subsection (i), but which have nothing to do with this case. Amici correctly note that this Court held in *Newpark* and *CGG* that some costs that could be characterized as the costs of providing services are nevertheless costs-of-goods-sold because they are the costs of furnishing labor to construction projects. *Hegar v. CGG Veritas Services (U.S.), Inc.*, 03-14-00713-CV, 2016 WL 1039054 (Tex. App.—Austin Mar. 9, 2016, no pet.); *Combs v. Newpark Res., Inc.*, 422 S.W.3d 46 (Tex. App.—Austin 2013, no pet.)

But, again, that observation has nothing to do with this case. As with its two-step approach discussed above, its discussion of this issue should be disregarded.

## CONCLUSION & PRAYER

The district court erred when granting summary judgment in favor of, and awarding attorneys' fees and costs to, Autohaus. Autohaus is not a "producer" of parts within the meaning of the Tax Code and, consequently, is not entitled to a costs-of-goods-sold deduction for labor costs incurred to install parts in customer-owned vehicles. The absence of jurisdiction to award attorneys' fees, coupled with

16

the trial court's erroneous application of the tax code, compels that the judgment be reversed.

Amici's arguments are contrary to the statute and should be disregarded.

WHEREFORE, PREMISES CONSIDERED, Appellants pray this Court reverse the judgment and render judgment for Appellants or, alternatively, reverse and remand to the district court for further proceedings.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

/s/ *Jack Hohengarten*
JACK HOHENGARTEN
State Bar No. 09812200
Division Chief, Tax Division
Tel. (512) 475-1743
Fax (512) 477-2348
jack.hohengarten@oag.texas.gov
P.O. Box 12548
Austin, Texas 78711-2548

CHARLES K. ELDRED
State Bar No. 00793681
Assistant Attorney General, Tax Division

PAMELA D. DEITCHLE
State Bar No. 24097583
Assistant Attorney General, Tax Division

***Counsel for Appellants***

18

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point font for text and 12-point font for footnotes. I further certify that, as computed by Microsoft Word 2013, the word processor used to create this document, this document contains 3,866 words, exclusive of any parts exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ *Jack Hohengarten*
JACK HOHENGARTEN

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2016, this *Appellant's Response to Brief of Amici* was served electronically through the electronic filing manager and/or via email as shown below:

David E. Colmenero      dcolmenero@meadowscollier.com
Alex Pilawski      apilawski@meadowscollier.com
MEADOWS, COLLIER, REED,
COUSINS, CROUCH &
UNGERMAN, L.L.P.

Amanda Taylor      ataylor@textaxlaw.com
James F. Martens      jmartens@textaxlaw.com
Danielle Ahlrich      dahlrich@textaxlaw.com
Lacy L. Leonard      lleonard@texataxlaw.com
MARTENS, TODD, LEONARD,
TAYLOR & AHLRICH

/s/ *Jack Hohengarten*
JACK HOHENGARTEN

19